UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                        :

AHMED M. ELGALAD,              :
                         :
               Plaintiff,   :
                         :
       - against -        :
                         :

NEW YORK CITY DEPARTMENT OF  :
EDUCATION, et al.,          :
                         :
            Defendants.  :
                         :
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/24/2018___

17-CV-4849 (VSB)

**OPINION & ORDER**

Appearances:

Bryan David Glass
Glass Krakower, LLP
New York, NY
*Counsel for Plaintiff*

Alana Rachel Mildner
William S.J. Fraenkel
New York City Law Department
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Ahmed Elgalad brings this action against the City School District of the City of

New York, operating as the "New York City Department of Education," (the "DOE"), Michelle

Rochon, Kabeya Mbuyi, and Livingstone Hilaire (the "Individual Defendants" and, together with

the DOE, "Defendants"), asserting claims under Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. §§ 2000e, *et seq*., 42 U.S.C. § 1981 ("§ 1981"), the New York State Human

Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq*., and the New York City Human

Rights Law ("NYCHRL"), N.Y.C. Admin Code §§ 8-101, *et seq*., for discrimination and

retaliation based on race and religion.  Before me is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I.    __Background__[1]

Plaintiff, who identifies as "Caucasian race/color" and of the Muslim religion, is employed by the DOE as a tenured physical education teacher.  (Am. Compl. ¶¶ 1, 4.)[2]  Plaintiff taught physical education at the High School for Global Citizenship ("HSGC") in Brooklyn, New York from September 2010 until September 2016.  (*Id.* ¶ 10.)  Livingstone Hilaire began working as the Assigned Principal at HSGC during the 2015-2016 school year.  (*Id.* ¶¶ 8, 29.)  Plaintiff does not identify Hilaire's race, color, or religious affiliation.  (*See generally id.*)  At all relevant times, Michelle Rochon was the Principal of HSGC, (*id.* ¶ 6), and Kabeya Mbuyi, who Plaintiff identifies as being black and non-Muslim, was an assistant principal at HSGC, (*id.* ¶ 7).

On or about March 6, 2014, Plaintiff had a verbal disagreement with another teacher, identified as Ms. Chance, who Plaintiff identifies as black and non-Muslim.  (*Id.* ¶ 13.)  As a result of that disagreement, Mbuyi held a disciplinary conference with Plaintiff and Ms. Chance.[3]  (*Id.*)  Plaintiff alleges that during the disciplinary conference, Mbuyi made comments about Plaintiff's religion and color, stating that Plaintiff, as a Muslim and white individual, feels that he is superior to Ms. Chance and Mbuyi.  (*Id.*)  Plaintiff alleges that Mbuyi told Plaintiff, "your religion considers everyone unclean and you are the only one that is clean" and "if it's not about

---

[1] I assume Plaintiff's allegations contained in the Amended Complaint, (Doc. 21), to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to the Amended Complaint, filed January 12, 2018.  (Doc. 21.)

[3] The Amended Complaint uses the term "disciplinary conference" but fails to define or describe such conferences within the context of the DOE.

religion, it will be black and white."  (*Id.*)

Thereafter, Plaintiff contends that Mbuyi began to conduct unfair observations of Plaintiff's work.  (*Id.* ¶ 15.)  In particular, Plaintiff states that in October 2014, Mbuyi conducted an observation of Plaintiff's class and, during that month, interrupted Plaintiff's class several times and undermined Plaintiff's authority in front of his students.  (*Id.* ¶ 16.)  On October 17, 2014, Mbuyi summoned Plaintiff to another disciplinary conference for allegedly "failing to provide a safe environment."  (*Id.* ¶ 17.)

On October 27, 2014, Plaintiff complained to Rochon about Mbuyi, claiming that Mbuyi had made inappropriate comments regarding Plaintiff's religion and color and that Mbuyi subsequently started to harass Plaintiff with false disciplinary proceedings.  (*Id.* ¶ 18.)  In response, Rochon told Plaintiff "to report only to her," and Rochon did not report Plaintiff's complaint to the DOE's Office of Equal Opportunity ("OEO").  (*Id.*)  After complaining to Rochon, Plaintiff asserts that his work environment became more hostile and school administrators started retaliating against him.  (*Id.* ¶ 19.)  In particular, Rochon "stopped paying [Plaintiff] for extra class coverages that she had previously paid him."  (*Id.* ¶ 20.)  In addition, on November 21, 2014, Plaintiff was called to a third disciplinary conference for charges that were unfounded.  (*Id.* ¶ 21.)

On December 8, 2014, Plaintiff filed a discrimination complaint against Mbuyi with the OEO.  (*Id.* ¶ 22.)[4]  Plaintiff claims that, after filing the OEO complaint, school administrators intensified their hostilities toward him.  (*Id.* ¶ 23.)  For example, on December 18, 2014, Plaintiff asserts that Mbuyi called him to another disciplinary conference.  (*Id.* ¶ 24.)  On February 4,

---

[4] Plaintiff states that he never received a decision from the OEO and that, on December 28, 2016, he was informed by the OEO that his case had been closed because he had filed a complaint with an "external human rights agency" citing the same issues.  (*Id.*)

2015, Rochon ordered Plaintiff to participate in an involuntary medical fitness for duty examination. (*Id.* ¶ 25.) On October 16, 2015, Hilaire gave Plaintiff an "ineffective observation" even though Plaintiff had been rated "effective" at the end of the 2014-2015 school year. (*Id.* ¶¶ 28, 30.) In December 2015 and April 2016, Rochon conducted an observation of Plaintiff's work and gave him a mixture of "ineffective" and "developing" ratings. (*Id.* ¶¶ 34, 35.) In January 2016, his "schedule" was "illegally changed" giving him only one physical education class. (*Id.* ¶ 32.) During the 2015-2016 school year, Plaintiff was called to disciplinary conferences on numerous occasions, including in March and April 2016. (*See id.* ¶¶ 33, 35.)

In addition to his OEO complaint, Plaintiff states that in March, April, and June 2015 he wrote to his Superintendent, Michael Prayor, and DOE Chancellor Carmen Farina about the "discrimination and retaliatory mistreatment from administration at his school." (*Id.* ¶ 26.) In response, he was informed that his complaint had been transferred to the DOE's Office of Special Investigation. (*Id.*) Plaintiff also asserts that on May 10, 2016, he sent a complaint to the Office of the Mayor regarding "the retaliation he was subjected to by the administration at his school." (*Id.* ¶ 36.) That complaint was forwarded to the OEO. (*Id.*)

Plaintiff received a disciplinary letter on May 26, 2016, alleging that he interfered with an "investigation by asking a student if she wrote any statement about him." (*Id.* ¶ 37.) In June 2016, Plaintiff was served with charges under New York Education Law § 3020-a, which addresses disciplinary procedures for tenured teachers, N.Y. Educ. Law § 3020-a, "seeking to terminate his employment based on the May 26, 2016 letter, and a couple of latenesses [sic] at the school," (*id.* ¶ 38).

In September 2016, Plaintiff was reassigned from HSGC, and in November 2016 he was

transferred to the Absent Teacher Reserve Pool where Plaintiff was "forced to rotate among several different schools . . . without being given a permanent assignment." (*Id.* ¶ 43.) The § 3020-a charges were heard before a panel hearing officer and Plaintiff received a $1,000 penalty fine in November 2016. (*Id.* ¶ 42.)

On May 1, 2017, Plaintiff received a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 46.)

## II. Procedural History

Plaintiff filed his initial complaint in this matter on June 27, 2017. (Doc. 1.) On August 18, 2017, Defendants filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss the complaint, (Doc. 7), and on September 21, 2017, Plaintiff filed a letter in response, (Doc. 14). On October 11, 2017, I held a pre-motion conference and set a deadline for Defendants to file their motion to dismiss and directed Plaintiff to file either a brief in opposition or an amended complaint. (*See* Doc. 16.) On November 13, 2017, Defendants filed their motion to dismiss the complaint, (Doc. 17), and on January 12, 2018, Plaintiff filed his Amended Complaint, (Doc. 21).

On February 15, 2018, Defendants filed their motion to dismiss the Amended Complaint, along with a memorandum of law in support and the declaration of Alana Mildner, with exhibits. (Docs. 24–26.) On March 19, 2018, Plaintiff filed a brief in opposition, (Doc. 27), and on April 2, 2018, Defendants filed their reply, (Doc. 28).

## III. Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237.  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).  In deciding a motion to dismiss, a court may also "consider matters of which judicial notice may be taken under Fed. R. Evid. 201, including public records such as arrest reports, indictments, and criminal disposition data."  *Smith v. City of N.Y.*, No. 12 Civ. 4572(KPF), 2013 WL 6158485, at *1 (S.D.N.Y. Nov. 25, 2013).  "If a court takes judicial notice of documents pertinent to a motion to dismiss, it need not convert the motion to dismiss into a motion for summary judgment."  *Jones v. Rivera*, No. 13-cv-1042 (NSR), 2015 WL 8362766, at *3 (S.D.N.Y. Dec. 7, 2015) (internal quotation marks

omitted).

## IV. <u>Discussion</u>

Defendants move to dismiss Plaintiff's Amended Complaint, arguing that: (1) Plaintiff's Title VII, NYSHRL, and NYCHRL claims against the DOE are time bared; (2) Plaintiff's NYSHRL and NYCHRL claims against the DOE are barred by Plaintiff's failure to file a notice of claim; and (3) Plaintiff failed to plead facts that plausibly suggest an inference of discrimination or retaliation. I address each of these claims below.

### A. *Title VII Limitations Period*

Filing an administrative complaint with the EEOC or the New York State Division of Human Rights ("NYSDHR") is a statutory prerequisite to maintaining a Title VII action. *See Ramos-Boyce v. Fordham Univ.*, 419 F. Supp. 2d 469, 473 (S.D.N.Y. 2005); *see also Shan v. N.Y.C. Dep't of Health & Mental Hygiene*, 316 F. App'x 23, 24 (2d Cir. 2009) (summary order). A charge must be filed with the EEOC or NYSDHR within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1); *Morrishow v. Weill Med. Sch. of Cornell Univ.*, No. 11 Civ. 5103(GBD)(GWG), 2013 WL 3038284, at *1 (S.D.N.Y. June 17, 2013). This statutory requirement effectively acts as a statute of limitations, and Title VII claims are barred by a plaintiff's failure to file a timely charge. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

Plaintiff filed charges with the NYSDHR on November 18, 2016. (Mildner Decl. Ex. 3.)[5] As such, Plaintiff's Title VII claims based on events occurring and acts taken prior to January 23, 2016—300 days before November 18, 2016—are time-barred. Many of Plaintiff's claims

---

[5] "Mildner Decl." refers to the Declaration of Assistant Corporation Counsel Alana R. Mildner in Support of Defendants' Motion to Dismiss the Amended Complaint, filed on February 15, 2018. (Doc. 26.) Attached to the Mildner Declaration is Plaintiff's Verified Complaint filed with the NYSDHR on November 18, 2016, of which I take judicial notice, *see supra* Part III.A.

concern events and acts that took place before January 23, 2016, including (1) Mbuyi's comments concerning Plaintiff's religion and race/color on or about March 6, 2014, (Am. Compl. ¶ 13), (2) Rochon's ceasing to pay Plaintiff for "extra class coverages" on October 27, 2014, (*id.* ¶ 20), (3) the multiple disciplinary conferences in 2014, (*id.* ¶ 21), (4) Plaintiff's rating of ineffective for an observation on October 16, 2015, and (5) Plaintiff being sent for a medical examination to assess his fitness for duty on February 4, 2015, (*id.* ¶¶ 25, 30). All of these events occurred more than 300 days before Plaintiff's filing with the NYSDHR. Therefore, any Title VII claims based on these events or any events that occurred prior to January 23, 2016, must be dismissed.[6]

###    B.    *NYSHRL and NYCHRL Notice of Claim Requirement*

NYSHRL and NYCHRL claims that "are brought against a school district, board of education, or school officer are subject to the notice of claim requirements contained in New York Education Law § 3813(1)." *Nelson v. Mount Vernon City Sch. Dist.*, No. 15-CV-8276 (KMK), 2017 WL 1102668, at *3 (S.D.N.Y. Mar. 23, 2017) (internal quotation marks omitted). As relevant here, New York Education Law § 3813(1) provides:

> No action or special proceeding, for any cause whatever, . . . shall be prosecuted or maintained against any school district, board of education, . . . or any officer of a school district, [or] board of education . . . unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim.

N.Y. Educ. Law § 3813(1); *see also Marino v. Chester Union Free Sch. Dist.*, 859 F. Supp. 2d 566, 570 (S.D.N.Y. 2012) ("Section 3813(1) of [the] New York State Education Law provides

---

[6] Defendants also assert that Plaintiff's NYSHRL and NYCHRL claims against the DOE are time barred. (Defs.' Mem. 7.) Because I dismiss the NYSHRL and NYCHRL claims as to the DOE, *see infra* Part IV.B, I do not address the timeliness of these claims. "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, filed on February 15, 2018. (Doc. 25.)

that no action may be maintained against a school district unless notice of claim was served within three months of the date on which the claim accrued.").  "This statutory prerequisite is not satisfied by presentment to any other individual or body, and, moreover, the statute permits no exception regardless of whether the governing body had actual knowledge of the claim or failed to demonstrate actual prejudice." *Nelson*, 2017 WL 1102668, at *3 (quoting *Parochial Bus Sys., Inc. v. Bd. of Educ. of N.Y.*, 458 N.E.2d 1241, 1245 (N.Y. 1983)).  In short, "[i]t is well settled in the Second Circuit that Education Law § 3813(1) is a statutory condition precedent to a plaintiff's bringing of a proceeding against a school district or board of education," and a plaintiff's failure to plead compliance with § 3813(1)'s requirements is a fatal defect mandating dismissal of the action.  *Id.* (internal quotation marks omitted).

Plaintiff fails to plead that he filed the requisite notice of claim.  (*See generally* Am. Compl.)  To the extent Plaintiff argues that his complaints made to the OEO, NYSDHR, or his Superintendent satisfy the notice requirement, (Pl.'s Opp. 11), Plaintiff is incorrect.[7]  *See Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 368 (W.D.N.Y. 2010) (dismissing claims and finding that plaintiff's filing of internal complaint and EEOC complaint was insufficient to satisfy notice requirement).

Accordingly, Plaintiff's NYSHRL and NYCHRL claims against the DOE are dismissed.

### C.     *Title VII Discrimination Claims*

#### 1.  Applicable Law

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or

---

[7] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint, filed on March 19, 2018.  (Doc. 27.)

privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To defeat a motion to dismiss a Title VII discrimination claim, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a substantial or motivating factor in the employment decision. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). As courts in the Second Circuit have long recognized, the "ultimate issue in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an impermissible reason, *i.e.*, a discriminatory reason." *Id.* at 87 (internal quotation marks omitted). A plaintiff can meet that burden through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination. *Id.* "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015). "[A]t the pleadings stage of an employment discrimination case, a plaintiff has a minimal burden of alleging facts suggesting an inference of discriminatory motivation." *Vega*, 801 F.3d at 85 (emphasis and internal quotation marks omitted).

## 2. Application

Plaintiff attempts to rely on disparate treatment to create an inference of discrimination. Specifically, he claims that Defendants took adverse actions against him with racial or religious animus, by treating him differently than a non-Muslim, non-white physical education teacher. (Am. Compl. ¶ 45; Pl.'s Opp. 8.) Even assuming that Plaintiff has sufficiently alleged an

adverse employment action, he fails to allege facts that plausibly suggest a discriminatory motive.

When considering whether a plaintiff has raised an inference of discrimination by showing that he was subjected to disparate treatment, a plaintiff must show that he was "similarly situated in all material respects" to the individuals to whom he seeks to compare himself. *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (internal quotation marks omitted). The comparators' circumstances need not be identical, but there must be a reasonably close resemblance of facts and circumstances. *See id.*; *see also McGuinness v. Lincoln Hall*, 263 F.3d 49, 53–54 (2d Cir. 2001). Although a plaintiff is not required at the pleading stage to put forth detailed facts regarding the comparators, "the plaintiff must at least plead allegations from which it is plausible to conclude that the comparators are similarly situated." *Blige v. City Univ. of N.Y.*, No. 1:15-cv-08873 (GBD) (KHP), 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017), *report and recommendation adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017).

Plaintiff broadly asserts that "[t]he other physical education teacher at [HSGC], Mr. Steve Nathan, is of black color and non-Muslim, and was treated better than Plaintiff by the school administration by being given Plaintiff's schedule even though Plaintiff had more seniority, and was given a higher performance rating than Plaintiff." (Am. Compl. ¶ 45.) Other than the fact that Mr. Nathan and Plaintiff both taught physical education at HSGC, Plaintiff does not allege any facts that would demonstrate that Mr. Nathan and Plaintiff were similarly situated. Plaintiff was found to have engaged in misconduct when he was late to school and interfered with an ongoing disciplinary investigation. (*Id.* ¶ 38.) Plaintiff does not allege that Mr. Nathan engaged in or was ever accused of comparable conduct. (*See generally* Am. Compl.) Additionally, Plaintiff's claim that Mr. Nathan was "given [Plaintiff's] schedule" is vague and fails to establish

that Mr. Nathan was given preferential treatment.  Moreover, Plaintiff fails to allege facts concerning the circumstances of Mr. Nathan's employment necessary for comparison to Plaintiff, such as:  (1) the length of time he has been employed by the DOE; (2) the length of time he has been employed as a physical education teacher; (3) his level of education; (4) to whom he reports; and (5) what other classes, if any, is he qualified to teach.  Plaintiff's allegations, generously construed, are little more than conclusory statements of no probative value, and such sweeping allegations are insufficient to state a claim of discrimination based on disparate treatment.  *See, e.g.*, *Whittle v. Cty. of Sullivan*, No. 16-CV-725 (CS), 2017 WL 5197154, at *7 (S.D.N.Y. Nov. 8, 2017) (dismissing claim because "Plaintiff fail[ed] to provide facts as to which colleagues committed similar acts but were not fired, what those acts were, to whom those employees reported, what their responsibilities were, and how their disciplinary histories compared to his" and noting that "[s]uch allegations are necessary to render plausible the inference that Plaintiff's race, rather than any number of other considerations, played a role in Plaintiff's termination" (internal quotation marks omitted)); *Yan v. Ziba Mode Inc*., No. 15-cv-47 (RJS), 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (dismissing Title VII discrimination case based on disparate treatment where Plaintiff failed to "plead any facts regarding how these employees' identities, experience levels, and conduct compared to Plaintiff's"); *Dean v. Westchester Cty. Dist. Attorney's Office*, 119 F. Supp. 2d 424, 430 (S.D.N.Y. 2000) (dismissing claim where "plaintiff should have provided this Court with a specific comparison between her treatment and that of similarly situated white, male employees").

In further support of his claim, Plaintiff alleges that Mbuyi made certain stray remarks about Plaintiff's race and religion in 2014, (Am. Compl. ¶ 13; Pl.'s Opp. 8), and that Rochon

allowed Mbuyi to retaliate against Plaintiff after Plaintiff complained about Mbuyi's discriminatory comments, (Am. Compl. ¶¶ 22–24; Pl.'s Opp. 8).  However, because these allegedly discriminatory actions occurred more than 300 days before Plaintiff filed his complaint with the NYSDHR, any claims based exclusively on that conduct are time barred.  *See supra* Part IV.A; *see also, e.g.*, *Kpaka v. City Univ. of N.Y.*, 708 F. App'x 703, 705 (2d Cir. 2017) (summary order); *Vega*, 801 F.3d at 80.

Accordingly, Plaintiff has not alleged enough facts to "nudge[ ] [his] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and his Title VII claims for discrimination against the DOE must be dismissed.

### D.     *Individual Liability for Discrimination Under § 1981*

#### 1.   **Applicable Law**

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  This section outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment.  *See, e.g.*, *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68–69 (2d Cir. 2000).  While claims under § 1981 need not be asserted within the 300-day period applicable to Title VII, the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981.  *See, e.g.*, *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225–26 (2d Cir. 2004).  "[I]n order for a § 1981 claim to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent."  *Evans-*

*Gadsden v. Bernstein Litowitz Berger & Grossman, LLP*, 332 F. Supp. 2d 592, 596 (S.D.N.Y. 2004) (internal quotation marks omitted). In order to make out a claim for individual liability under § 1981, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action . . . . [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement." *Whidbee*, 223 F.3d at 75 (internal citation and quotation marks omitted).

## 2. Application

Defendants argue that Plaintiff fails to allege that the Individual Defendants engaged in any specific discriminatory action on the basis of Plaintiff's race.[8] I find that Plaintiff has adequately alleged a claim of race discrimination as to Mbuyi but not as to Rochon or Hilaire.

Plaintiff maintains that, in March 2014, Mbuyi criticized Plaintiff's race/color, stating during a disciplinary conference that "your religion considers everyone unclean and you are the only one that is clean," and further stated "if it's not about religion, it will be black and white." (Am. Compl. ¶ 13.) Shortly thereafter, Plaintiff contends that Mbuyi conducted unfair observations of Plaintiff's work, interrupted Plaintiff's classes, undermined Plaintiff's authority in front of his students, and harassed Plaintiff with numerous false disciplinary conferences, which all contributed to his eventual reassignment. At this stage of the proceedings, the comments made by Mbuyi, followed by the alleged mistreatment of Plaintiff, raise a plausible inference of racially discriminatory intent. *See, e.g.*, *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 476 (S.D.N.Y. 2013) (finding racially charged comments "sufficient to give rise to an inference of discriminatory intent" and sustain a § 1981 claim against a 12(b)(6) motion (internal

---

[8] A claim of discrimination based on religion is not cognizable under § 1981. *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998).

quotation marks omitted)).

With regard to Hilaire and Rochon, Plaintiff claims that they occasionally observed Plaintiff's work and gave him ineffective and developing ratings and summoned Plaintiff to periodic disciplinary conferences. However, Plaintiff makes no allegations that these actions by Hilaire and Rochon were done because of Plaintiff's race or color. The pleading as to Rochon and Hilaire is nothing more than the recitation of the false syllogism: "(1) I am (insert name of a protected class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)." *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 581 (S.D.N.Y. 2011) (dismissing § 1981 claims where plaintiff failed to allege racial animosity). Absent allegations of fact tending to show that the alleged discriminatory conduct by Rochon and Hilaire was based on Plaintiff's race, Plaintiff fails to state a claim for individual liability under § 1981. *See Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002) (per curiam); *Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07 Civ. 11316(HB), 2008 WL 3861352, at *9 (S.D.N.Y. Aug. 19, 2008).

Accordingly, Defendants' motion to dismiss Plaintiff's claim for discrimination under § 1981 is granted as to defendants Rochon and Hilaire and denied as to defendant Mbuyi.

### E.  *Retaliation Claims*

#### 1.  Applicable Law

In order to survive a motion to dismiss a retaliation claim brought under Title VII, § 1981, or the NYSHRL, a plaintiff must plausibly allege that:  (1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action. *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007); *Gachette v. Metro N. High Bridge*,

No. 12 Civ. 3838(AJN), 2013 WL 144947, at *6 (S.D.N.Y. Jan. 14, 2013). "A plaintiff engages in a protected activity when she opposes any practice made an unlawful employment practice . . . or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Bermudez*, 783 F. Supp. 2d at 575 (internal quotation marks omitted). An adverse employment action is a "materially adverse change" in the terms and conditions of employment, which means "a change in working conditions that is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* at 576 (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "Examples of a materially adverse change include the 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Id.* (quoting *Galabya*, 202 F.3d at 640).

The NYCHRL embodies a broader conception of actionable retaliation than Title VII, § 1981, or the NYSHRL. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 277–79 (2d Cir. 2009). Under the NYCHRL, a plaintiff need not have suffered a materially adverse employment action; instead, the defendant need only have taken an action that would be "reasonably likely to deter a person from engaging in protected activity." *Mazyck v. Metro. Transp. Auth.*, No. 07 Civ. 3561(DAB), 2012 WL 3865155, at *12 (S.D.N.Y. Sept. 4, 2012). Nevertheless, despite the liberal construction accorded claims under the NYCHRL, a plaintiff must still allege enough facts to state a claim to relief that is plausible on its face.

## 2. Application

### a. Title VII Claims

To the extent Plaintiff alleges retaliation claims based on incidents occurring before January 23, 2016, such claims are barred by the statute of limitations for Title VII claims. *See supra* Part IV.A. The only alleged protected activity occurring within the limitations period transpired on May 10, 2016 when Plaintiff "sent a complaint to the Office of the Mayor about the retaliation he was subjected to by the administration at his school." (Am. Compl. ¶ 36.) Plaintiff claims that shortly thereafter, on or about June 22, 2016, he was "served with the [§ 3020-a] disciplinary charges seeking to terminate his employment." (*Id.* ¶ 38.)

Even assuming that Plaintiff's May 10 complaint constituted a protected activity, and that Defendants were aware of the complaint, Plaintiff fails to allege facts that raise a plausible inference that he suffered any adverse employment action as a result of that complaint. With respect to the causation element of a claim, "retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2012). Here, Plaintiff acknowledges that the § 3020-a disciplinary charges were initiated "for allegedly interfering with an investigation [and] a couple of latenesses at the school." (Am. Compl. ¶¶ 37–38.) Plaintiff alleges no facts that raise a plausible inference that the § 3020-a disciplinary charges were prompted by Defendants' desire to retaliate against Plaintiff rather than because of his various workplace performance issues. *See Smith v. Johnson*, No. 14-cv-3975 (KBF), 2014 WL 5410054, at *3 (S.D.N.Y. Oct. 24, 2014) (dismissing retaliation claim where plaintiff alleged no facts raising a plausible inference that she suffered adverse employment action as result of protected activity rather than lateness and

performance issues), *aff'd*, 636 F. App'x 34 (2d Cir. 2016).[9]  Thus, Plaintiff has not alleged any facts occurring within the requisite statute of limitations to support an inference that any adverse action was taken based on any protected activity.

Accordingly, Defendants' motion to dismiss the Title VII retaliation claims is granted.

### b.  Section 1981, NYSHRL, and NYCHRL Claims[10]

Plaintiff has sufficiently pled claims for retaliation under § 1981, the NYSHRL, and the NYCHRL, which are not subject to the same limitations period as claims brought under Title VII.  Plaintiff filed his discrimination complaint with the OEO on December 8, 2014.  (Am. Compl. ¶ 22.)  Plaintiff claims that after he filed his complaint, the school administration, including Mbuyi, Rochon, and Hilaire, "intensified their scrutiny of him."  (*Id.* ¶ 23.)  In particular, on December 18, ten days after Plaintiff filed his OEO complaint, Mbuyi called Plaintiff to a disciplinary conference, (*id.* ¶ 24), on February 4, 2015, approximately two months after Plaintiff filed his OEO complaint, Rochon ordered Plaintiff to submit to an involuntary medical examination, (*id.* ¶ 25), and on October 16, 2015, approximately ten months after filing his OEO complaint, Plaintiff received an "ineffective observation" from Hilaire and continued to be observed by Hilaire and Rochon, (*id.* ¶ 30).

Plaintiff alleges that he engaged in multiple other instances of protected activity known to Defendants and that Defendants took actions against him as result.  For example, Plaintiff

---

[9] To the extent Plaintiff relies on the fact that he was brought up on § 3020-a charges at the end of the 2015-2016 school year, fined $1,000 in November 2016, and reassigned to the Absent Teacher Reserve Pool as evidence of retaliation for filing his OEO complaint in December 2014, those events occurred between one and two years after Plaintiff filed his OEO complaint and are not temporally proximate enough to create an inference of causation.  *See Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005) (finding that plaintiff could not make a prima facie case of retaliation as more than one year had elapsed between plaintiff's protected activity and the resulting adverse action).

[10] Because the NYSHRL and NYCHRL retaliation claims as to the DOE are dismissed for failure to file a notice of claim, *see supra* Part IV.B, the only remaining NYSHRL and NYCHRL retaliation claims are those pertaining to the Individual Defendants.

states that he complained to Rochon on October 27, 2014 regarding the discriminatory comments made by Mbuyi. As a result, on that same date, Rochon stopped paying Plaintiff for "extra class coverages," and on November 21, 2014, subjected Plaintiff to a disciplinary conference that was "eventually unfounded." (*Id.* ¶¶ 20–21.) Additionally, Plaintiff claims that in March, April, and June 2015, he wrote to his Superintendent and the DOE Chancellor regarding the discriminatory and retaliatory mistreatment he was experiencing. (*Id.* ¶ 26.) Plaintiff was subsequently given multiple ineffective development ratings by Rochon and Hilaire and summoned to numerous disciplinary conferences throughout March and April 2016. Plaintiff was ultimately reassigned from the school in September 2016.

In the Second Circuit, a plaintiff can indirectly establish a causal connection to support a retaliation claim by "showing that [a] protected activity was closely followed in time by [an] adverse [employment] action." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal quotation marks omitted). While courts in the Second Circuit have not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between a protected activity and an allegedly retaliatory action, courts have found temporal relationships as long as ten or eleven months satisfactory to support a causal connection. *See, e.g.*, *Bernhardt v. Interbank of N.Y.*, No. 92 CV 4550, 2009 WL 255992, at *6 (E.D.N.Y. Feb. 3, 2009) (concluding that eleven months between protected activity and firing might suggest relationship where defendant had possible reasons for delaying firing); *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) (opining that up to four months would be sufficient to support an allegation of a causal connection); *Suggs v. Port Auth. of N.Y. & N.J.*, No. 97 CIV. 4026 RPP, 1999 WL 269905, at *6 (S.D.N.Y. May 4, 1999) (finding that six months between filing EEOC complaint and firing

suggests causal relationship); *Stephens v. State Univ. of N.Y. at Buffalo*, 11 F. Supp. 2d 242, 250 (W.D.N.Y. 1998) (stating that approximately six months between EEOC complaint and filing of disciplinary report might show causal connection); *see also Lambert v. N.Y. State Office of Mental Health*, No. 97-CV-1347 (JG), 2000 WL 574193, at *13 (E.D.N.Y. Apr. 24, 2000) (noting that in light of intervening circumstances, five months was too great a time period to establish retaliation for EEOC complaint); *Castro v. Local 1199, Nat'l Health & Human Servs. Emps. Union*, 964 F. Supp. 719, 728 (S.D.N.Y. 1997) (remarking that one year is too long to show causal connection between filing of EEOC complaint and termination).

Here, I find that Plaintiff's allegations suggest a sufficient causal connection between his multiple allegations of protected activity and the subsequent adverse actions allegedly taken in response to withstand Defendants' motion to dismiss the retaliation claims under § 1981, the NYSHRL, and the NYCHRL.

### F. *Municipal Liability Under § 1981*

A municipality, or municipal agency such as the DOE, may be held liable under § 1981 only if a plaintiff's injury is the result of municipal policy, custom, or practice. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Patterson*, 375 F.3d at 226. To maintain a claim, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks omitted). The plaintiff "need not identify an express rule or regulation, but can show that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Littlejohn*, 795 F.3d at 315 (internal quotation

marks omitted).

"[T]he single act of a municipal policymaker, *i.e.*, a person with the authority to set municipal policy, can constitute official policy, and thus, can give rise to municipal liability." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). However, a municipal agency can only be held liable for the conduct of an official where that official "ha[d] final authority over significant matters involving the exercise of discretion . . . . An official has final authority if [her] decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983).

Plaintiff has alleged sufficient factual allegations to support a § 1981 cause of action against the DOE at this stage of the litigation. Courts in this Circuit routinely find that "a public school principal may be a final policymaker where the harm that befell the plaintiff was under the principal's control," but "where the final authority for a particular matter is not within the principal's control or is subject to review by another official or entity, the principal is not the final policymaker with respect to that matter." *Vasquez v. N.Y.C. Dep't of Educ.*, No. 11-cv-3674 (AJN), 2015 WL 3619432, at *11 (S.D.N.Y. June 10, 2015) (internal quotation marks omitted), *aff'd*, 667 F. App'x 326 (2d Cir. 2016).

Here, Plaintiff can proceed under the theory that Rochon, as the principal of HSGC, orchestrated conduct that was not reviewable by other officials or entities. Plaintiff contends that Rochon, among other things, endorsed Mbuyi's discriminatory treatment of Plaintiff, allowed Mbuyi to retaliate against Plaintiff after Plaintiff reported Mbuyi's discriminatory actions to Rochon, and that Rochon triggered the DOE's disciplinary hearings against Plaintiff in a retaliatory manner. These allegations read in a light most favorable to Plaintiff and drawing

all reasonable inferences in the Plaintiff's favor, plausibly allege that Rochon endorsed a policy of racial and religious discrimination against non-black teachers. Because Rochon had final say regarding these acts she may be considered a final decision maker for purposes of *Monell* liability. *See Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000); *see also Rookard*, 710 F.2d at 45 ("Where an official has final authority over significant matters involving the exercise of discretion, the choices [she] makes represent government policy."); *cf. Fierro v. N.Y.C Dep't of Educ.*, 994 F. Supp. 2d 581, 589 (S.D.N.Y. 2014) (finding that, "with respect to termination of teachers' employment, principals do not have final decisional authority [because] their decisions are subject to appeal to the Chancellor and the DOE").

Accordingly, dismissal of Plaintiff's § 1981 claims for municipal liability against the DOE are not appropriate at this juncture.

## V.      <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss, (Doc. 24), is GRANTED IN PART and DENIED IN PART. Defendants' motion is granted as to Plaintiff's Title VII claims for discrimination and retaliation; Plaintiff's § 1981 claim for discrimination as to Rochon and Hilaire; and Plaintiff's NYSHRL and NYCHRL claims for discrimination and retaliation as to the DOE, and those claims are dismissed. Defendants' motion is denied as to Plaintiff's remaining claims.

Within twenty-one (21) days of the date of this order, the parties are directed to submit a proposed case management plan and scheduling order, pursuant to Rule 2.C of my Individual Rules.

The Clerk's Office is respectfully directed to close the open motion at Docket Entry 24.

SO ORDERED.

Dated: September 24, 2018
      New York, New York

Vernon S. Broderick
United States District Judge