UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                               :
AHMED M. ELGALAD,                          :
                                               :
                     Plaintiff,            :
                                               :                          17-CV-4849 (VSB)
                     -v-                                :
                                               :                         **OPINION & ORDER**
NEW YORK CITY DEPARTMENT OF    :
EDUCATION, MICHELLE ROCHON,     :
KABEYA MBUYI, and HILAIRE          :
LIVINGSTON,                                    :
                                               :
                     Defendants.   :
-------------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/2019
```

Appearances:

Bryan David Glass
Glass & Hogrogian LLP
New York, NY
*Counsel for Plaintiff*

Alana Rachel Mildner
New York City Law Department
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

     Before me are Defendants' motion for reconsideration of my September 24, 2018 Opinion and Order ("September 2018 Opinion"), and Plaintiff's apparent cross-motion for reconsideration and for leave to amend his complaint. Defendants request that I reconsider the holdings contained in Sections IV(D)(2) and IV(F) of my September 2018 Opinion, in which I declined to dismiss (1) certain of the Plaintiff's claims of racial discrimination under 42 U.S.C. § 1981; (2) his claim for individual liability against Kabeya Mbuyi; and (3) his claim for municipal liability against the New York City Department of Education. Plaintiff requests that I reinstate

his Title VII claims against the New York City Department of Education, or in the alternative, allow him to file an amended complaint. Because I find there is no basis for me to reconsider my September 2018 Opinion, Defendants' motion and Plaintiff's motion for reconsideration are DENIED. Plaintiff's motion for leave to file a second amended complaint is also DENIED.

I. **Background**[1]

Plaintiff Ahmed Elgalad, who identifies as "Caucasian race/color" and of the Muslim religion, is employed by the New York City Department of Education ("DOE") as a tenured physical education teacher. (Am. Compl. ¶¶ 1, 4.)[2] From September 2010 until September 2016, he taught physical education at the High School for Global Citizenship ("HSGC") in Brooklyn, NY. (*Id.* ¶ 10.) He alleges that on March 6, 2014, he had a verbal disagreement with another teacher, and was called in for a disciplinary conference with Defendant Kabeya Mbuyi, the assistant principal at HSGC. (*Id.* ¶ 13.) Plaintiff claims that during that conference Defendant Mbuyi made comments about his religion and color, stating that Plaintiff, as a Muslim and white individual, feels that he is superior to Ms. Chance and Mbuyi. (*Id.*) Plaintiff alleges that Mbuyi told Plaintiff, "your religion considers everyone unclean and you are the only one that is clean" and "if it's not about religion, it will be black and white." (*Id.*)

Thereafter, Plaintiff contends that Defendant Mbuyi and other individuals – including co-Defendants Hilaire Livingston, the Assigned Principal, and Michelle Rochon, the Principal, began discriminating against him. He claims Mbuyi began conducting unfair observations of his

---

[1] Aside from a brief review of the allegations contained in Plaintiff's Amended Complaint, which I assume to be true for the purposes of the instant motion, I assume the parties' familiarity with the facts of this case. A more thorough recitation of the facts is set forth in my September 2018 Opinion, which also assumes Plaintiff's allegations to be true. (Doc. 30.) *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's Amended Complaint, filed on January 12, 2018. (Doc. 21.)

work, interrupting his class, undermining his authority in front of his students, and summoning him to disciplinary conferences. (*Id.* ¶¶ 15, 16.) He asserts that when he complained to Rochon about Defendant Mbuyi's actions Rochon did not report the incident to the DOE's Office of Equal Opportunity ("OEO"), and that in fact the environment became more hostile and school administrators started retaliating against him. (*Id.* ¶¶ 18–19.) Plaintiff claims that he then filed a formal discrimination complaint with the OEO, and that hostilities subsequently intensified. (*Id.* ¶¶ 11–12.) For example, he claims, he received worse ratings, his schedule was changed, he was called to multiple disciplinary conferences, and was eventually served with formal charges under New York Education Law § 3020-a. (*Id.* ¶¶ 28–38.) In September 2016, Plaintiff was reassigned from HSGC. (*Id.* ¶ 43.) In November 2016, he was transferred to the Absent Teacher Reserve Pool where Plaintiff was "forced to rotate among several different schools . . . without being given a permanent assignment." (Id. ¶ 43.) The § 3020-a charges were heard before a panel hearing officer and Plaintiff received a $1,000 penalty fine in November 2016. (*Id.* ¶ 42.)

## II. **Procedural History**

On May 27, 2017, Plaintiff commenced this action by filing his initial Complaint against Defendants Hilaire Livingston, Kabeya Mbuyi, Michelle Rochon, and the DOE. (Doc. 1.) Defendants filed a motion to dismiss the original complaint on November 13, 2017. (Doc. 17.)

Plaintiff then filed an amended complaint against the same defendants on January 12, 2018 ("Amended Complaint"), asserting the following claims: (1) discrimination and retaliation by DOE based on religion, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et. seq.*; (2) discrimination and retaliation based on race by all defendants, in violation of 42 U.S.C. § 1981 ("§ 1981"); and (3) discrimination and retaliation based on race and religion by all defendants, in violation of the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. L. § 290, *et seq.*, and the New York City Human Rights Law ("NYCHRL", N.Y.C. Admin. Code § 8-101, *et seq.* (Doc. 21.)

On February 15, 2018, Defendants filed their motion to dismiss the Amended Complaint (Doc. 24), along with a memorandum of law, (Doc. 25), and the declaration of Alana Mildner and exhibits, (Doc. 26). On March 19, 2018, Plaintiff filed a brief in opposition, (Doc. 27), and on April 2, 2018, Defendants filed their reply, (Doc. 28.)

On September 24, 2018, I issued the September 2018 Opinion, granting in part and denying in part Defendants' motion to dismiss. (Doc. 30.) Specifically, the September 2018 Opinion dismissed Plaintiff's Title VII claims for discrimination and retaliation, Plaintiff's § 1981 claim for discrimination as to Rochon and Hilaire, and Plaintiff's NYSHRL and NYCHRL claims for discrimination and retaliation as to the DOE. (*Id.* at 22.) The remainder of Plaintiff's claims survived. (*Id.*)

On October 5, 2018, Defendants filed a Motion for Reconsideration of my September 2018 Opinion, (Doc. 31), along with a memorandum of law, (Doc. 32). On October 17, 2019, I issued an order tolling Defendants' time to answer the Amended Complaint until fourteen (14) days after the date of my decision on Defendants' motion for reconsideration. (Doc. 36.) On October 19, 2018, Plaintiff submitted a letter opposing Defendants' motion and requesting reinstatement of Plaintiff's Title VII claims against DOE, or in the alternative to "replead the specifics of his allegations regarding the questions raised on p.12 of the Court's Decision." (Doc. 37.) On October 25, 2018, Defendants submitted a letter in further support of their motion for reconsideration, and opposing Plaintiff's request as untimely. (Doc. 38.)

### III. **Legal Standards**

Defendants' request that I reconsider my September 2018 Opinion appears to be made pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. However, Defendants fail to cite to Local Rule 6.3 in their notice of motion, and only reference Local Rule 6.3 in the conclusion to their memorandum of law. Plaintiff also fails to cite the statutory authority upon which he bases the requests in his letter. Nevertheless, I will construe Defendants' motion as one for reconsideration under Local Civil Rule 6.3 and Plaintiff's letter as a motion for reconsideration under Local Civil Rule 6.3 and for leave to amend his complaint under Federal Rule of Civil Procedure Rule 15(a)(2).

#### A. *Local Rule 6.3*

Local Civil Rule 6.3 permits reconsideration or reargument of a court's order in certain limited circumstances. The rule provides that a party's notice of motion for reconsideration must be served within fourteen (14) days after the entry of the Court's determination of the original motion.

The standard for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). A motion for reconsideration should be denied if the moving party "merely offers substantially the same arguments he offered on the original motion." *See United States v. Kerik,* 615 F. Supp. 2d 256,

n.27 (S.D.N.Y. 2009) (citation omitted).

The decision of whether to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753(KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)). Generally, a party seeking reconsideration must show either "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted).

### B. *Federal Rule of Civil Procedure 15(a)(2)*

Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend a complaint] when justice so requires." But "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Leave to amend is "rightfully denied" where the plaintiff "is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *see also DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 33 (2d Cir. 2014) (summary order) ("[A] plaintiff need not be given leave to amend if the plaintiff fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." (citing *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006))).

## IV. Discussion

I first address the parties' motions for reconsideration, then turn to Plaintiff's request for leave to amend his complaint.

### A. *Defendants' Motion for Reconsideration*

Defendants request that I reconsider two holdings of my September 2018 Opinion: (1) that Plaintiff failed to state a claim of individual liability for racial discrimination under 42 U.S.C. § 1981 against Kabeya Mbuyi, and (2) that Plaintiff failed to state a claim of municipal liability for racial discrimination under 42 U.S.C. § 1981. (Defs.' Mem. 2.)[3] Defendants' arguments fail to meet the high standard for reconsideration of a court's order.

#### 1. Plaintiff's Claim of Individual Liability Against Defendant Mbuyi

Defendants argue that I erred in sustaining Plaintiff's claim of race discrimination against Mbuyi because the comment she allegedly made "does not evince discriminatory animus on the basis of race," (Defs.' Mem. 4), and because the Amended Complaint fails to plead a connection between the comment and the terms and conditions of Plaintiff's employment, (*id.* at 6–9). Specifically, Defendants argue that I inserted the necessary animus and the necessary link into Plaintiff's complaint. (*See generally id.*) I address these two arguments in turn.

On a motion to dismiss, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306–07 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[3] "Defs.' Mem." refers to Defendants' memorandum of law in support of their motion for reconsideration, filed on October 5, 2018. (Doc. 32.)

"Section 1981 bars certain racially motived and purposefully discriminatory acts." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994). Accordingly, to state a § 1981 claim and a survive a motion to dismiss, a plaintiff must allege "the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP*, 332 F. Supp. 2d 592, 596 (S.D.N.Y. 2004) (quoting *Yusuf v. Vassar Coll.*, 827 F. Supp. 952 (S.D.N.Y. 1993), *aff'd*, 35 F.3d 709). In other words, what is required is pleading of the circumstances giving rise to an inference of animus, not an explicit statement of the inference itself. On a motion to dismiss, the burden of showing facts suggesting an inference of discriminatory motivation is "minimal." *See Littlejohn*, 795 F.3d at 311.

In my September 2018 Opinion, I concluded under this liberal standard that Plaintiff had pled sufficient facts to give rise to a plausible inference of discriminatory intent: that Mbuyi (i) had made racial comments and (ii) thereafter had conducted unfair observations of Plaintiff's work, interrupted his classes, undermined his authority, and harassed him with false disciplinary comments. (Sept. 2018 Op. 13–15.)[4] These facts are sufficient at this stage of the litigation to suggest an inference of discriminatory motivation.

Defendants have submitted no "change of controlling law or evidence" to disturb that conclusion, or shown that it was in "clear error" or wrought "manifest injustice." *See Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255. Mere disagreement with this Court's interpretation and analysis of the facts pled is not an appropriate ground for reconsideration. *Mina Inv. Holdings Ltd. v. Lefkowitz*, 184 F.R.D. 245, 251 (S.D.N.Y. 1999); *cf. Ballard v. Parkstone Energy, LLC*, No. 06

---

[4] "Sept. 2018 Op." refers to my September 2018 Opinion and Order regarding Defendants' motion to dismiss the amended complaint, issued on September 24, 2018. (Doc. 30.)

Civ. 13099(RWS), 2008 WL 4298572, at *1–2 (S.D.N.Y. Sept. 19, 2008) (denying motion for reconsideration of opinion denying summary judgment where it was based on "disagree[ment] with the Court's assessment of the evidence"). A Rule 6.3 motion "is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." *Lehmuller v. Inc. Vill. of Sag Harbor*, 982 F. Supp. 132, 135 (E.D.N.Y. 1997) (citing *Walsh v. McGee*, 918 F. Supp. 107, 110 (S.D.N.Y. 1996)); *see also Tatum v. City of New York*, No. 06 Cv. 4290(BSJ)(GWG), 2009 WL 976840, at *2 (S.D.N.Y. Apr. 9, 2009) (rehashing of previous arguments, demeaning evidentiary value of testimony, and asserting that the court may have overlooked controlling case law or the record as a whole, was "precisely the type of practice that is not permitted in a motion for reconsideration") (citation omitted).

Defendants also do not provide grounds for reconsideration on the basis that Plaintiff failed to plead a connection between Mbuyi's comment and the terms and conditions of Plaintiff's employment. Defendants take issue with my application of an analogous case, *Robledo v. Bond No. 9*, 965 F. Supp. 2d 470, 476 (S.D.N.Y. 2013); as observed above, mere disagreement with the Court's analysis is not a proper basis for reconsideration. Defendants then go on to cite two additional cases, neither of which controls in the manner Defendants suggest it should, and both of which were cited in Defendants' original brief so it cannot be said that they were not considered or before me. (Defs.' Mem. 6–9; *see also* Defs.' MTD Mem. 11, 15.)[5]

Defendants cite first to the Second Circuit's holding that to make out a claim for individual liability under § 1981, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action," *Whidbee v. Garzarelli Food Specialties, Inc.*,

---

[5] "Defs.' MTD Mem." refers to the Defendants' memorandum of law in support of their motion to dismiss the amended complaint, filed on February 15, 2018. (Doc. 25.)

223 F. 3d 62, 75 (2d Cir. 2000) (internal quotation marks omitted), in support of their argument that Plaintiff here has not "connect[ed] Dr. Mbuyi to any employment actions taken against Plaintiff," (Defs.' Mem. 6). In *Whidbee*, the Second Circuit held that there was no affirmative link justifying individual liability of a pair of restaurant owners on the basis of harassment committed by one employee against another employee. *Whidbee*, 223 F. 3d at 65–68, 74–75. *Whidbee* was decided upon the defendants' motion for summary judgment, *id.* at 66, so the plaintiff's burden on his employment discrimination claim was higher than it would have been on a motion to dismiss. *See Littlejohn*, 795 F.3d at 311. Accordingly, Plaintiff here was not required to make the same factual showing as in *Whidbee*. *See id.* I cited to *Whidbee*'s requirement of personal involvement in my September 2018 Opinion, and in finding that Plaintiff had stated a claim—based on his allegations that Mbuyi made a specific comment and then proceeded to personally mistreat him—concluded that this requirement had been met. (Sept. 2018 Op. 14–15.) Defendants have not shown this was in error.

Defendants also argue that the Mbuyi's alleged mistreatment did not rise to the level of a change in Plaintiff's terms and conditions of employment. (Defs.' Mem. 8–9; *see also Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) ("[A]n adverse employment action" within the context of an employment discrimination claim is "a materially adverse change in the terms and conditions of employment.") (internal quotation marks omitted)).) Defendants cite to *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006), for the proposition that "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner." According to Defendants, the disciplinary meetings Plaintiff was called to were merely examples of his employer reasonably enforcing its preexisting policies. As an initial

matter, *Joseph* affirmed a district court's grant of summary judgment; my consideration of Defendants' argument would require me to consider facts about disciplinary meetings and DOE policies that are not properly before me at this time. The facts at issue in *Joseph* are not analogous to those presented here: the plaintiff in *Joseph* was placed on paid administrative leave during the pendency of a criminal case against him and during his employer's subsequent formal investigation. *Joseph*, 465 F.3d at 88–89. Defendants provide no data supporting an analogy between those facts and the instant matter. They have not identified the preexisting disciplinary policy they argue was being enforced by calling Plaintiff to multiple disciplinary meetings, the purported basis for calling him to those meetings, or the legal authority that would permit me to consider these facts at this stage of the proceedings. As a result, *Joseph* does not control here. *See So. Westchester Realty Assocs., LLC v. Am. States Ins. Co.*, No. 14-CV-8229 (ALC), 2018 WL 2947969, at *2 (S.D.N.Y. May 15, 2018) (holding on which the defendants based their motion for reconsideration did not control because it did not create "a blanket rule" that applied to the case at hand and involved meaningfully different facts).

Defendants' remaining points amount to mere disagreements with my analysis of the facts pled and are inappropriate for a motion for reconsideration. *See Mina Inv. Holdings Ltd.*, 184 F.R.D. at 251.

### 2. Plaintiff's Claim Against the Department of Education for Municipal Liability

I next turn to Defendants' request that I reconsider my finding that Plaintiff stated a claim of municipal liability against the Department of Education. Defendants argue that Defendant Rochon was not a final policymaker, and so Plaintiff failed to make out a claim of municipal liability. (Defs.' Mem. 2.) *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (for municipal liability to

obtain, the "challenged acts" must have been "performed pursuant to a municipal policy or custom"). "[T]he single act of a municipal policymaker, *i.e.*, a person with the authority to set municipal policy, can constitute official policy, and thus, can give rise to municipal liability." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). An official may only be considered a "municipal policymaker" where she "has final authority over significant matters involving the exercise of discretion . . . . An official has final authority if [her] decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983). A policy need not be shown by "express rule or regulation," but may be evidenced by "a discriminatory practice of municipal officials . . . so persistent or widespread as to constitute a custom or usage with the force of law, or . . . a discriminatory practice of subordinate employees . . . so manifest as to imply the constructive acquiescence of senior policy-making officials." *Littlejohn*, 795 F.3d at 315 (internal quotation marks omitted).

In the September 2018 Opinion, I held that Plaintiff had pled facts that plausibly alleged that Rochon orchestrated conduct not reviewable by anyone else, including by endorsing Defendant Mbuyi's discriminatory treatment of Plaintiff, allowing Defendant Mbuyi to retaliate against Plaintiff after Plaintiff reported Mbuyi's discriminatory actions to Rochon, and triggering the DOE's disciplinary hearings against Plaintiff in a retaliatory manner. (Sept. 2018 Op. 20–22.) I specifically observed that "[c]ourts in this Circuit routinely find that 'a public school principal may be a final policymaker where the harm that befell the plaintiff was under the principal's control.'" (*Id.* at 21 (quoting *Vasquez v. N.Y.C. Dep't of Educ.*, No. 11-CV-3674 (AJN), 2015 WL 3619432, at *11 (S.D.N.Y. June 10, 2015) (citation omitted), *aff'd*, 667 F. App'x 326 (2d Cir. 2016)).)

Defendants argue that in so holding, I "overlooked the law concerning teacher discipline and misconstrued the applicable facts." (Defs.' Mem. 2.) According to Defendants, Plaintiff's "vague allegations" failed to show how Rochon endorsed or allowed Mbuyi's conduct. In addition, they argue, merely triggering the DOE disciplinary hearings cannot give rise to municipal liability because the hearings were conducted and the charges were reviewed by a panel hearing officer, and so Rochon was not the "final decision-maker." (*Id.* 3–4.)

Defendant's argument about the structure of teacher discipline does not introduce new data—in fact, they raised the same argument in their memorandum in further support of their earlier motion, (Defs.' MTD Reply 6),[6] but now expand upon it, (Defs.' Mem. 3–4). A motion for reconsideration is not a vehicle for "relitigating old issues . . . or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012). Nevertheless, I address it briefly in the interest of examining whether my decision was in "clear error." *See Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255.

Defendants point out that many courts in this circuit have held school principals not to be policymakers for *Monell* purposes when their decisions were reviewable. (Defs.' Mem. 3, (citing *Fierro v. N.Y.C. Dep't of Educ.*, 994 F. Supp. 2d 581, 589 (S.D.N.Y. 2014); *Krzesaj v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 2926 (ER), 2017 WL 1031278 at *10 (S.D.N.Y. Mar. 15, 2017)).) These are district court decisions and do not control here; indeed, as one of them observes, "courts in this Circuit are split as to whether a principal can in fact be considered the final policymaker with respect to teacher discipline. *Krzesaj*, 2017 WL 1031278, at *10. My holding cannot, therefore, have been in clear error.

---

[6] "Defs.' MTD Reply" refers to Defendants' memorandum of law in further support of their motion to dismiss the amended complaint, filed on April 2, 2018. (Doc. 28.)

In addition, the facts of the cases cited by Defendants differ meaningfully from the facts of this case: both *Fierro* and *Krzesaj* held that principals were not final policymakers with respect to specific disciplinary decisions reviewable by the Department of Education— termination and teaching evaluations, respectively. *See Fierro*, 994 F. Supp. 2d at 589; *Krzesaj* 2017 WL 1031278, at *10. Here, by contrast, I found Rochon to be a policymaker not with respect to the preferment of charges against Plaintiff in and of itself, but with respect to Plaintiff's allegations that Rochon did so in a retaliatory manner, in conjunction with endorsing Defendant Mbuyi's discriminatory treatment of Plaintiff and allowing him to retaliate against Plaintiff after Plaintiff reported Defendant Mbuyi's discriminatory actions to Rochon. (Sept. 2018 Op. 21.) A municipal official may be a final policymaker as to some issues but not as to others. *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) ("[W]ith respect to the conduct challenged, [the official] must be responsible under state law for making policy *in that area* of the municipality's business." (internal quotation marks omitted)).

Where courts have found principals to be policymakers, the circumstances are often similar to those alleged here, with the principal creating or allowing a retaliatory or hostile environment at school—the type of conduct that would be within a principal's final control, unlike the formal discipline of a teacher. *See Giscombe v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 464(LTS)(KNF), 2013 WL 829127, at *7 (S.D.N.Y. Feb. 28, 2013) (on a motion to dismiss, court could appropriately draw the "reasonable inference" that the principal had final policy-making authority "over the . . . referral of charges"); *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 563 (W.D.N.Y. 2013) (plaintiff plausibly alleged that principal was a policymaker where he had the authority to subject plaintiff to an intimidating investigation and to threaten to involuntarily transfer plaintiff to a less desirable school); *Zambrano-Lamhaouhi v. N.Y.C. Bd. of*

*Educ.*, 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011) (claim of municipal liability withstood summary judgment to the extent that the principal was responsible for "any hostile work environment to which he subjected" the plaintiff, but not for the termination of plaintiff's probation or her demotion); *Williams v. Bd. of Educ.–City of Buffalo,* No. 07-CV-698C, 2008 WL 2946003, at *3 (W.D.N.Y. July 29, 2008) (plaintiff stated a claim for municipal liability on the basis of allegations that the principal had personally harassed her and that she had been subject to a retaliatory transfer); *Lovell v. Comsewogue Sch. Dist.,* 214 F. Supp. 2d 319, 324 (E.D.N.Y. 2002) (plaintiff stated a claim for municipal liability on the basis that the principal failed to prevent students from harassing homosexual teacher).

Accordingly, because Defendants have failed to show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," their motion for reconsideration is denied. *See Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255 (citation omitted).

### B. *Plaintiff's Motion for Reconsideration*

Plaintiff requests that I "reinstate the Title VII discrimination and retaliation claims dismissed against Defendant NYCDOE." (Pl.'s Resp. 1–2.)[7] As mentioned, he does not specify what rule he makes this request under, but I construe it as a motion for reconsideration under Local Rule 6.3.

---

[7] "Pl.'s Resp." refers to Plaintiff's letter, filed October 19, 2018, opposing Defendants' motion for reconsideration, requesting reconsideration on different grounds, and requesting leave to amend. (Doc. 37.)

### 1. Timeliness

As an initial matter, Plaintiff's request is untimely. It was made on October 19, 2018, twenty-five (25) days after the docketing of my September 2018 Opinion, rather than within the fourteen (14) days required by Local Civil Rule 6.3. The fourteen-day deadline to make a motion for reconsideration "is not merely a procedural quirk, it serves to protect the integrity of proceedings before the Court by ensuring some measure of finality." *United States v. Reichberg*, No. 1:16-cr-468-GHW, 2018 WL 6599465, at *9 (S.D.N.Y. Dec. 14, 2018) (internal quotation marks omitted). Accordingly, courts "in this Circuit routinely deny untimely motions for reconsideration without considering their merits." *Beckles v. City of New York*, No. 08 Civ. 3687(RJH)(JCF), 2010 WL 1841714, at *4 (S.D.N.Y. May 10, 2010); *see also, e.g., Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, No. 01 Civ. 654(RCC), 2005 WL 1176122, at *2 (S.D.N.Y. May 18, 2005) (collecting cases). It would therefore be well within my discretion to deny Plaintiff's motion as untimely; however, it would also be within my discretion to grant a retroactive extension of the deadline. *United States v. Am. Soc'y of Composers, Authors & Publishers*, 323 F. Supp. 2d 588, 589 n.1 (S.D.N.Y. 2004) (citing *Lichtenberg v. Besicorp Grp., Inc.*, 204 F.3d 397, 403–04 (2d Cir. 2000)). Plaintiff makes no showing that would justify such an extension, or even an acknowledgement of the lateness of his filing. (*See generally* Pl.'s Resp.) Therefore, I would deny Plaintiff's motion for reconsideration on this basis alone. However, Plaintiff's motion also fails on the merits.

### 2. Merits

Plaintiff requests reconsideration of two portions of the September 2018 Opinion. First, he takes issue with my dismissal of his Title VII discrimination claim on the basis that Plaintiff's attempts to show that he was subjected to disparate treatment compared with a colleague, Steve

Nathan, another physical education teacher who he alleges is "of black color and non-Muslim," did not suffice to give rise to an inference of discrimination. (Sept. 2018 Op. 10–12.) I found that Plaintiff had failed to allege sufficient facts to show he was similarly situated to this colleague, a requirement of pleading disparate treatment. (*Id.* (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).)

Plaintiff contends that he has alleged facts showing that he was similarly situated to Mr. Nathan, and urges the Court to "construe the complaint liberally." (Pl.'s Resp. 1.) As noted above, mere disputes with the Court's analysis of the facts are not sufficient to justify reconsideration. *See Mina Inv. Holdings Ltd.*, 184 F.R.D. at 251.

Plaintiff also claims that the September 2018 Opinion "does not appear to address Plaintiff's timely Title VII retaliation claim that the Section 3020-a disciplinary charges commenced against Plaintiff were in retaliation for his filing OEO complaints against his school administration." (Pl.'s Resp. 2.) This is patently untrue. The Opinion specifically analyzes that claim through the lens of the Title VII but-for causation requirement, which demands "proof that the desire to retaliate was the but-for cause of the challenged employment action." (Sept. 2018 Op. 17 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)).) I concluded that Plaintiff had alleged "no facts raising a plausible inference that the 3020-a disciplinary charges were prompted by Defendants' desire to retaliate against Plaintiff rather than because of his various workplace performance issues." (Sept. Op. 18.) Plaintiff has pointed to no law or data that would justify disturbing that conclusion. *See Shrader*, 70 F.3d at 257. Because Plaintiff has fallen far short of the showing required for reconsideration of a court's order, his motion is denied. *See Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255.

### C. *Plaintiff's Motion for Leave to Amend his Amended Complaint*

In the alternative, Plaintiff requests the "opportunity for leave to replead the specifics of his allegations regarding the questions raised on p.12 of the Court's decision [finding that Plaintiff had not alleged facts to show he was similarly situated to Mr. Nathan], and further clarify how Mr. Nathan was similarly situated to him during the relevant time period." (Pl.'s Resp. 2.)

Plaintiff has had multiple opportunities to cure the pleading deficiencies in his Title VII claim, but has failed to take advantage of them. Plaintiff's initial complaint, filed pro se, contained the following allegation regarding Nathan: "The other physical education teacher at the school, Mr. Steve Nathan, is of black color and was treated better than me by the school administration by being given my schedule even though I had more seniority, and was given a higher performance rating than me." (Compl. 9 ¶ 12.)[8] After Defendants announced their intention to move to dismiss the complaint, I set a briefing schedule that gave Plaintiff two months after Defendants filed their motion to either oppose the motion or to file an amended complaint. (Doc. 16.) Defendants' motion, filed November 13, 2017, argued specifically that "Plaintiff had not alleged any facts that would demonstrate that Mr. Nathan and Plaintiff were similarly situated." (Doc. 17-1 at 13.)

Plaintiff then retained counsel and submitted an Amended Complaint two months later. The Amended Complaint—having been drafted and filed with the benefit of Defendants' initial motion to dismiss—contained a nearly identical allegation about Nathan; the only changes were the replacement of the words "me" and "I" with the word "Plaintiff." (Am. Compl. ¶ 45.) Plaintiff alleged no additional facts about Mr. Nathan. (*See generally* Am. Compl.)

---

[8] "Compl." refers to Plaintiff's initial complaint, filed on June 27, 2017. (Doc. 1.)

Defendants moved to dismiss the Amended Complaint, repeating their argument that Mr. Nathan and Plaintiff were similarly situated. (Defs.' MTD Mem. 12–13.) Plaintiff submitted an opposition to the motion, which simply repeated his allegations about Mr. Nathan and made no additional legal or factual argument as to why the two were similarly situated. (Pls.' MTD Opp. 8.)[9] Plaintiff also made an informal request for leave to file a second amended complaint, but did not frame this request as a formal motion, submit a proposed pleading, or make an argument as to why he would be entitled to such leave. (*Id.* at 2, 27.) Consequently, my September 2018 Opinion did not explicitly rule on Plaintiff's request, but in granting Defendants' motion in part, did not do so with leave to amend.

Defendants' motions to dismiss gave Plaintiff ample notice of the deficiencies in his pleading, but he failed to take advantage of his opportunities to cure or attempt to cure them. Now, once again, Plaintiff has made his request to amend his pleading without making any attempt at showing what facts he would plead to remedy the deficiencies identified by the Court. *See Porat*, 464 F.3d at 276. His conclusory statement that he will "clarify how Mr. Nathan was similarly situated to him," (Pl.'s. Resp. 2), is insufficient to "demonstrate that he would be able to amend his complaint in a manner which would survive dismissal." *See Hayden*, 180 F.3d at 53.

Accordingly, allowing Plaintiff the opportunity to amend his complaint again would not be in the interests of justice. Plaintiff's request is denied.

---

[9] "Pl.'s MTD Opp." refers to Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss the amended complaint, filed on March 19, 2018. (Doc. 27.)

## V. Conclusion

For the foregoing reasons, Defendants' Motion for Reconsideration and Plaintiff's Motion for Reconsideration are both DENIED. Plaintiff's motion for leave to amend the Amended Complaint is also DENIED.

The Clerk of Court is respectfully directed to terminate the motion at Doc. 31.

SO ORDERED.

Dated: September 30, 2019
　　　　New York, New York

_____
Vernon S. Broderick
United States District Judge